The appellate court is reconvened. Please be seated. This next case is case number 4-15-0550. Illinois Municipal League Risk Management Association v. The City of Genoa. Is it pronounced Genoa? Genoa. Or Genoa. Okay. And appearing for the appellant is Attorney Jennifer Gibson. And appearing for the appellee is Attorney Joseph Postel. Postel. Postel.  Thank you. Ms. Gibson, are you ready to proceed? Yes, thank you. You may please look forward. Good afternoon. I am Jennifer Gibson. I do represent the City of Genoa. Thank you very much for granting oral argument today. The trial court erred in granting the insurance carrier judgment on the claims. Especially considering the low threshold that Genoa had to establish of just the potential for coverage to exist. When looking at these cases, ordinarily, the courts look to the underlying complaint, which in this case is the RTA's complaint filed against Genoa and Cook County, and compares it with the underlying insurance policy. And in this case, the relevant policy is RMA-IV. And if the facts fall within just the potential of coverage, then there is a duty to defend here. Now, RMA-IV, if you look at the language, it insures against losses, which members shall be legally obligated to pay because of wrongful acts. They define losses including damages. And clearly, money damages, money damages due to wrongful acts were meant to be covered here. You look to the RTA Cook County complaint, and it alleges that Genoa committed a wrongful act. It alleges that Genoa entered into an economic development agreement, enticing Petra Lyons-Bankoski at that time to claim Genoa as its tax site. And the RTA seeks damages. In Count 1, it specifically states that it prays for damages in the amount of tax revenue that it was denied. And it doesn't limit itself to post-heartening damages. It seeks damages also pre-heartening, the 2006 through the 2013. Then in Count 2, again it prays for money judgment in the amount of sales tax lost. And in the trial court, and on appeal here, the insurance carrier's main argument was that this is disgorgement. You know, this is not covered. This is not a case of disgorgement. We didn't get the RTA's tax. And the RTA's Cook County suit does a really good job at laying out the sales tax scheme here in Illinois, which I didn't even know before I heard this case. But in short, the sales tax on general merchandise in Illinois is 6.25%. Of that 6.25%, non-home-rule municipalities get what's called the local share, which amounts to 1%. Now, home-rule municipalities and home-rule counties can impose additional taxes above and beyond that, and get above and beyond that 1% share. They can do that in .25 increments. And then the RTA, if the sales made in Cook County or one of the collar counties, the RTA gets to impose a tax of .75 in the collar counties or 1% or 1.25 in the Cook County. So in Genoa, sales tax is just a straight 6.25 for a non-home-rule municipality. You look at other municipalities throughout the state, such as I'm from Woodstock. And Woodstock is from one of the collar counties. It's in McHenry County. It's a non-home-rule municipality, and sales tax there is 7% because you take 6.25%, of which Woodstock gets the 1% local share, but then the RTA adds on a .75 over and above that. And additionally, in addition to its .75%, the RTA receives its 30% match from the state. And as another example, what the RTA is claiming is that Petro-Lyons' true tax site should have been in Elgin. In Elgin, in Cook County, the tax is 9.25 due to the 6.25% local tax, a home-rule tax of 1.25, a Cook County tax of .75, and then again the RTA tax. So the RTA tax is something above and beyond. It's a different tax than the local share. Genoa did not get the RTA tax. Genoa got the municipal share tax. And if you take what the RTA's complaint says is true, and we disagree, and we believe it's defendable, but that's not what's up before the court here. The RTA is looking for its tax, not Genoa's local share tax. They're contending that that local share tax should have gone to Elgin. But there'd be no, in no circumstances where that local share tax that we received would have ever gone to the RTA. And if you look at the disgorgement cases, I don't, we don't dispute that those cases are put law. Genoa's position is that they're very distinguishable because they truly, they truly involve situations of disgorgement or restitution if needed. And take, for instance, the local 705 Teamsters case. In that case, pension managers wrongfully removed pension funds. And pursuant to a court, pursuant to a settlement, they had to return those funds that were wrongfully removed. And the holding of that court was that an insurer does not sustain an insurable loss by returning to the rightful owners that to which the insurer had no right to in the first place. But that's not the case here because Genoa's not being asked to return our local share. And nor could the RTA even have standing to make us return what it contends to be Elgin's local share. We don't have the RTA's tax. We can't give it back. And the RTA wouldn't even have standing to make us give Elgin's, what they contend is Elgin's local share back. We have our 1% local share that is, at best case scenario, ours, Belvedere's, or Elgin's. The RTA's tax is not only different, it's in a different amount because of the 30% state match. So, even if we were made to, even if Genoa's position is wrong that this is a case of disgorgement, which I don't think that we are, if we disgorge everything, there's still potentially more due over and above what we collected. Because number one, there's the 30% match that we didn't get. Not to mention that 50% of the 1% that we collected was rebated to PetroLines. We don't even have that anymore. You look at the other cases, and it's similar to the local 101. They're foreign cases, but they all deal with true situations where restitution or disgorgement is asked for. The Level 3 case, in that case, stocks were acquired by fraud, and the corporation had to give the stocks back. And the court analogized that as even stolen property. And here, I don't think anybody can stand here and say that Genoa has stolen property, especially in light of the pre-Hartney. Until 2015, even the IDOR was advising taxpayers and municipalities and tax beneficiaries that your place of business is where your orders are accepted. It wasn't until Hartney that that all was changed. Here, Genoa didn't steal anything. Genoa is not alleged to commit fraud. Genoa is alleged to have entered into an economic development agreement. Now, there are two cases that were cited in the briefs that do deal with, there are tax cases. In the Brookhaven case, that's a New York case, that's also distinguishable. There, the school district sued the town for failing to turn over its tax revenue. But that's different. The town was responsible for collecting that tax revenue, and it was also responsible for distributing it. The town had the school district's money. Here, we're not responsible for collecting it. The IDOR is. We're not responsible for distributing it. And we certainly don't have it. The Central Dauphin case, also cited in the brief, it's a Pennsylvania case, is also different. In that case, the school district imposed a tax on housewives and retirees. It was an improperly levied tax, and the court held you have to give it back. You have the money, you have to give it back to the rightful owners, the people who paid the tax. And again, this is not the situation. We're not being sued to return an improperly levied tax. Juneau is being sued for entering into this economic development agreement, which caused the RTA to be deprived of an entirely different tax than we received. In their response brief, I'd like to address the issue of the windfall. The insurance carrier argued that Juneau is receiving a windfall. And again, I think that that's a standing issue. Certainly, the RTA believes that we have Kane County's local share. However, if somebody steals something from my neighbor, I can't go and bring a conversion suit to make that person give my neighbor back his property. You just can't do that. The RTA wants its money. Not Elgin's, not Belvedere, the RTA wants its tax. Also, although there is an allegation in the complaint that does complain that Juneau did receive a windfall by getting the local share tax, I think you have to look at the complaint as a whole. And by just focusing on that, you're ignoring other portions of the RTA complaint, such as paragraph 3 of the RTA complaint that states, This scheme deprives the RTA of its portion of sales tax revenue necessary to fund its continued operation. Its portion. Or paragraph 47, where it specifically prays for its sales tax that it was denied. As well as the two prayers for relief from count 1 and count 2, where it prays for its sales tax. I also want to touch on the exclusions. There were two exclusions that I think were relevant in the trial court and then in the briefings. And they were exclusion number 1, and then I think it's exclusion number 12, dealing with the issuance, collection, and management of taxes. As for the first one, the first exclusion at issue, which we do not believe is applicable, is the exclusion that states, that excludes coverage for gaining in fact any profit or advantage to which members were not legally entitled. Again, that's the disgorgement issue. If your honors are in agreement that this is not a case of disgorgement or restitution, then I think exclusion 1 is probably off the table. The most talked about exclusion by both the trial court and in the briefs was the exclusion number 12, I believe it is. And that's the one dealing with the issuance, collection, or management of proceeds, or repayment of taxes by members. And here, I think we have to remember we're dealing with an exclusion, and they're especially scrutinized. More so than the rest of the policy. And any ambiguities are construed very strongly in favor of the insured on the exclusions. And in favor of coverage, I think you look at this here, and I don't even believe this is ambiguous. It says that excluded is the issuance, collection, or management of proceeds, or repayment of taxes issuance. You know it didn't issue this tax, it's issued by state statute. Collection, you know it didn't collect the tax, the IDOR did. Management of proceeds, we certainly did not manage the proceeds. We received what the IDOR gave us, or the repayment of taxes by the members. We are not being asked to repay the RTA's taxes, we didn't get them. When you look at this, when you look at the RTA's complaint as a whole, it is clear that Genoa got different money. And I think the analogy that I used in my brief may be cliche, but I think it works. Genoa received apples here. And what the RTA wants is its oranges. And if we give back our apples, that's still not going to get the RTA's oranges. What the RTA is seeking is they're seeking money damages. Money damages is an entirely different amount than we receive. In fact, we never received any of the RTA's money. Thank you for your time. Thank you counsel. Mr. Postel. May it please the court. What I'd like to focus on is the exclusion for taxes for a couple of reasons. The main reason is I think it's the simplest way to resolve the case and it's the easiest way to look at it. I like easy and simple. But as the court knows, the focus has been on whether the remedy sought by the RTA is discouragement or damages or, in counsel's colorful phrase, apples or oranges. So I'll talk about that, but I'd like to start off by talking about the exclusion, because if the court agrees with the trial judge that the exclusion for taxes applies, then the court doesn't have to decide whether the complaint seeks discouragement or damages. So let's talk about that exclusion briefly. It's exclusion 12, and it provides in the preamble to the list of exclusions. This is at page 93 of the record. The association shall not be liable to make payments for loss in connection with any claim made against the members based upon or arising out of the following. And then there's a list of a lot of things that are excluded. And number 12 is the issuance, collection, or management of proceeds or repayment of taxes by any members, etc. So the way the trial judge essentially construed the exclusion was, he said, and I'm paraphrasing, it's obvious to me that the IML did not want to cover anything related to taxes. So on that basis he found that it applied. The main criticism of his ruling that Genoa is making is that the judge just looked at the word taxes and didn't really focus on the qualifiers in that sentence. Specifically he didn't consider whether the taxes that are involved in this case or the suit that involves those taxes pertains to issuance, collection, or management of proceeds or repayment of taxes. And their contention is this complaint involves none of those things. I don't think that's obvious at all, that it involves none of those things. Why does this case not involve repayment of taxes? Is that not exactly what the underlying complaint seeks? Did they collect the RTA's taxes? Well, that's a very good question, and that's frankly the heart of their argument, is that Genoa never collected this revenue, and so therefore whatever money they have to pay couldn't be repayment of taxes, because they never collected the taxes. That's their argument. What's wrong with it is that it contradicts the allegations in the complaint. Now, it's a great argument for the underlying case, and maybe it's enough to support a judgment in their favor in the underlying case, but in the coverage case, when it's a duty to defend case like we have here, and all you're doing is looking at the complaint and comparing it to the policy, you can't base a request for coverage on the fact that an allegation in the complaint is false. Paragraph 38 alleges that Genoa received an unjustified windfall in sales tax revenue. That's the allegation. Now, maybe that's not true. They say it's not true, but that's the allegation, and that's the allegation on which the court needs to base its coverage determination. So just as an insurance company cannot avoid coverage by saying an allegation is untrue, an allegation on which coverage depends, neither can an insured say I'm entitled to a defense because an allegation that negates coverage is untrue. Both sides are bound by the allegations in the complaint, so that's true here as well. They're stuck with this allegation that they received the revenue. But there's no dispute about the fact that they received revenue, but it wasn't the RTA's revenue that they received. They received general tax revenue. It may be correct, but I think what I want to say about that in response to your question, Your Honor, is the counsel referred to reading the complaint as a whole. I agree. That's what the court should do. If you read the complaint as a whole, it's apparent that the RTA is alleging that Genoa never had a right to any of this revenue because the economic development agreement under which the collective sales tax revenue or sales tax revenue was distributed to them was a sham. It was contrary to law, and the sales were generated within the RTA's taxing boundaries, not in Genoa, which is outside those boundaries. And so none of the money that Genoa received should have been received. That's the basic premise of the underlying complaint. Count 2, doesn't it ask for equitable relief and damages? Count 2 is asking for declaratory relief, and I think that's all it's asking for. Equitable accounting, declaration that the taxitis of Petroliant's sales is Elgin, not Genoa, that sort of thing. But as far as your question, Your Honor, aren't they asking for damages? Genoa's argument is that at best for us, the complaint asks for discouragement and damages both. Now that took me by surprise when I saw it on the reply brief, because it seemed to me that it wasn't the argument that they've been making to the trial judge, or on their opening brief for that matter. So I don't want to get into our motion to strike or disregard the argument, because the court's denied my motion. I don't know if I should construe that as a determination by the court that this isn't a new argument. I don't think it's that important anyway if the court focuses on the exclusion. But here's the point. Even if the complaint seeks damages over and above discouragement, that wouldn't take it out of the operation of the exclusion for tax repayment. And here's the reason for that. Again, according to the complaint, they did receive this revenue. They are being asked to discourage it, repay it. I don't know how you can say that's not a form of repayment. How can RTA ask the village of Genoa to repay taxes that may have been collected instead by the city of Belgium? RTA is not entitled to that. Okay, and again, that's a great argument they can make in the underlying case. Well, if they can make that argument in the underlying case, why don't you have a duty to defend them? Because that's not what the complaint says. The complaint says they did receive revenue, paragraph 38. But it doesn't allege they received RTA's revenue. And it can't allege that because they didn't receive RTA's revenue. I grant that. It doesn't say they received RTA's revenue, but it says they never had a right to receive any of the revenue and they have to give it up. And the party suing is the RTA, so naturally it's going to go to the RTA if the RTA recovers. But in any event, let me get back to the exclusion. So the categories listed in the exclusion are issuance, collection, or management, or proceeds, or repayment. So even if you assume it's not repayment, how is it not collection? And now they say that the tax is imposed by the state and collected by the state and then distributed to Genoa. But they collect those distributions. They received the money. Again, the complaint says this. They received the money. The complaint says they had no right to receive it and they have to give it up. And the only party seeking that money is the RTA. So I think the exclusion applies. And furthermore, my last point is that if any of these categories applies, and the two most likely candidates are collection or repayment of taxes, then that exclusion would apply not only to the sums actually collected by Genoa, but also to the damages, the oranges that counsel is referring to, because of the term arising out of and the exclusion. And I think it's important to focus on arising out of and what it means. Counsel refers to the fact that exclusions are construed narrowly against the insurer. That rule is true only when the exclusions are ambiguous. When they're not ambiguous, they're given their ordinary meaning. And in particular, I think the court should be aware of a decision that came down after the briefing in this case was completed. I provided a copy to counsel. And I should have brought it to the court's attention earlier, but frankly it didn't occur to me that this case was relevant to this case until very recently. In any event, she's had a chance to review it. The name of the case is Illinois Casualty Company v. West Dundee Banana Palace Restaurant. It's a second district decision from December 23rd of last year. And the case number is 2015 L. App. 2nd, 150016. And I'm not going to belabor the details of the case, but let me just tell the court why I think it's important in determining and applying, determining the meaning of and applying this arising out of language and the exclusion to this case. In that case, the underlying case was one of those blast facts cases against a restaurant that faxed advertising material to somebody that didn't want it. And as the court is probably aware, there can be some pretty big damages under that federal blast fact statute. I know this court decided a case, Standard Mutual v. Lay, a couple of years ago. So the court has seen this type of lawsuit. In any event, the restaurant's policy had an exclusion for violations of the blast fact statute. And on that basis, the insurer declined to provide a defense, filed a declaratory action. And the insured argued, wait a minute, I'm only being sued in count one for violating the blast fact statute. Count two is conversion, and count three is Illinois consumer product. Those aren't within the exclusion, because those aren't actions under the statute. And the court held, no, they are within the exclusion, because they arise out of the same conduct, the violations of the federal blast fact statute. So all of them are within the scope of the exclusion. They're all excluded. And I think the court, I respectfully submit, should adopt the reasoning of that decision here. If any of the damages sought in this case, or I should say the remedies sought in this case, constitutes repayment or collection of taxes, then the exclusion applies. And it applies to all of the damages, because they all involve repayment or collection of taxes. They all arise out of, even if they are oranges, as counsel points out, some of the tax payments would be damages beyond what Genoa collected. And it would still arise out of collection or repayment of taxes, and it would still be excluded. So for those reasons, we suggest that the court should affirm the judgment below. Mr. Postow, you seem to quarrel with my description of count two. And I've got from the appendix the complaint sitting in front of me, and count two says it's a claim for damages and equitable relief. Right. So I agree that if count two seeks damages, then according to counsel's argument, that would fall outside of discouragement. But it wouldn't fall outside of the exclusion for collection or repayment of taxes, because it still involves collection or repayment of taxes. So for that reason, I would suggest that the judgment should be affirmed. Thank you, counsel. Thank you very much. Roboto. And Mr. Postow did share the Illinois Casualty case with me, so I am familiar with it, and here's why I don't think that that case is applicable here. In that case, it dealt with an exclusion, and it excluded matters arising out of the Telephone Consumer Protection Act. It excluded all matters related to the Telephone Consumer Protection Act. However, here, the exclusion does not exclude all matters relating to taxes. And the trial court was, I think, wrong to say that. The trial court ruled that the insurance company just didn't want to defend cases related to taxes. That's not what the exclusion said. And certainly, if they wanted to exclude all cases related to taxes, they could have worded that policy that way. They just didn't say that. And so we're down to the collection of taxes. Or is it about repayment? And no, because we're not being sued for the taxes that we collected. We're being sued for entering into this agreement that deprived somebody of a totally different tax. And we're not being sued and asked to repay the RTA's tax because we didn't get it. We can't repay what we didn't get. Exclusion 12, it just doesn't apply. If they wanted to exclude all matters related to taxes, they could have written the exclusion that way. They didn't. It just doesn't say that. Respectfully, we believe that judgment on the pleadings was wrongfully granted, and we'd like a shot at gaining our coverage in this matter. We paid for our coverage, and we think we deserve our indemnity. Thank you. All right, thank you, counsel. Thank you both. The case will be taken under advisement, and a written decision shall issue. The court stands in recess.